## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.**

BRUCE GREENAWALT, Individually and
On Behalf of All Others Similarly Situated,

Plaintiff,

v.

RIOT BLOCKCHAIN, INC. f/k/a BIOPTIX,
INC., JOHN O'ROURKE, and JEFFREY G.
McGONEGAL,

Defendants.

---

## CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

---

Plaintiff Bruce Greenawalt ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Riot Blockchain, Inc. f/k/a Bioptix, Inc. ("Riot" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Riot's securities between October 4, 2017 through February 15, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Riot Blockchain, Inc. purports to operate as a digital currency company. The Company represents that it focuses on buying cryptocurrency and blockchain businesses, as well as supporting blockchain technology companies

3.      Founded in 2000, the Company was formerly known as Bioptix, Inc. ("Bioptix") and changed its name to Riot Blockchain, Inc. in October 2017.  Riot is based in Castle Rock, Colorado and its common stock trades on NASDAQ Capital Market ("NASDAQ") under the ticker symbol "RIOT."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Riot lacked a meaningful business plan with respect to the cryptocurrency business and had only minimal investments in cryptocurrency products; (ii) the Company changed its name to Riot Blockchain, Inc. as part of a scheme to capitalize on public interest in cryptocurrency products, thereby driving up the Company's stock price and enriching inside shareholders; (iii) Riot never intended to hold its Annual General Meetings scheduled for December 28, 2017 and February 1, 2018;

and (iv) as a result of the foregoing, Riot shares traded at artificially inflated prices during the Class Period, and class members suffered significant losses and damages.

5.      On February 16, 2018, CNBC published a report based on an investigation of Riot.  The CNBC report noted that Riot's "stock shot from $8 a share to more than $40, as investors wanted to cash in on the craze of all things crypto", but that Riot did not appear to have meaningful involvement in the cryptocurrency business: "Until October, its name was Bioptix, and it was known for having a veterinary products patent and developing new ways to test for disease."  In addition, CNBC reported numerous "red flags" in Riot's SEC filings: "annual meetings that are postponed at the last minute, insider selling soon after the name change, dilutive issuances on favorable terms to large investors, SEC filings that are often Byzantine and, just this week, evidence that a major shareholder was getting out while everyone else was getting in."

6.      On this news, Riot's share price fell $5.74, or over 33.37%, to close at $11.46 on February 16, 2018, damaging investors.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Riot purports to maintain its principal executive offices in this Judicial District.

11.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.    Plaintiff, as set forth in the attached Certification, acquired Riot securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.    Defendant Riot is incorporated in Nevada, with principal executive offices reportedly located at 202 6th Street, Suite 401, Castle Rock, Colorado 80104.  Riot's securities trade on the NASDAQ under the ticker symbol "RIOT."

14.    Defendant John O'Rourke ("O'Rourke") has served as the Company's Chief Executive Officer ("CEO") and Chairman of the Board since November 3, 2017.

15.    Defendant Jeffrey G. McGonegal ("McGonegal") has served as the Company's Chief Financial Officer ("CFO") since June 30, 2017.

16.    The defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

17.    The Individual Defendants possessed the power and authority to control the contents of Riot's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged

herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Riot Blockchain, Inc. purports to operate as a digital currency company. The Company represents that it focuses on buying cryptocurrency and blockchain businesses, as well as supporting blockchain technology companies.

19.     Blockchain protocols offer a secure way to store and relay information without the need for middlemen. It uses a decentralized and encrypted ledger that offers a secure, efficient, verifiable, and permanent way of storing records and other information. Blockchain protocols are the backbone of numerous digital cryptocurrencies including Bitcoin, Ethereum and Litecoin.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on October 4, 2017, when the Company issued a press release entitled "Bioptix Changing Name to Riot Blockchain as Company Shifts Focus to Strategic Investor and Operator in Blockchain Technologies."  In the press release, Riot stated, in part:

> CASTLE ROCK, Colo., Oct. 4, 2017 -- Bioptix Inc. (Nasdaq: BIOP) today announced it is changing its name to Riot Blockchain, Inc., and has reserved and

plans to change its Nasdaq ticker symbol RIOT, in line with a shift in direction of the company. The name and symbol change are subject to Nasdaq approval. Moving forward, Riot Blockchain's focus will be as a strategic investor and operator in the blockchain ecosystem with a particular focus on the Bitcoin and Ethereum blockchains.

As part of this focus, the company announces it has made a strategic investment in Coinsquare Ltd., one of Canada's leading exchanges for trading digital currencies. This investment into a blockchain-focused company is indicative of similar opportunities Riot Blockchain plans to pursue, including possible acquisitions of businesses serving the blockchain ecosystem.

"At Riot Blockchain, our team has the insight and network to effectively grow and develop blockchain assets," said Michael Beeghley, Chief Executive Officer of Riot Blockchain. "With new applications being developed for blockchain every day, this is a rapidly growing and evolving market. We are excited to have partnered with and led an investment in Coinsquare, a company we believe is well positioned to capitalize on the opportunity in this sector."

21.    On November 13, 2017, Riot filed a quarterly report on Form 10-Q for the period ended September 30, 2017 (the "3Q17 10-Q") with the SEC, which provided the Company's quarterly financial results and position. The 3Q17 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

22.    On December 27, 2017, the Company issued a press release entitled "Riot Blockchain Announces Adjournment of Annual Meeting of Stockholders" which announced the cancelation of the annual meeting of stockholders scheduled for the following day. The press release stated in relevant part:

Annual Meeting to Resume on Thursday, February 1, 2018

CASTLE ROCK, Colo., Dec. 27, 2017 /PRNewswire/ -- Riot Blockchain, Inc. (Nasdaq: RIOT) (the "Company") today announced that its 2017 Annual Meeting of Stockholders scheduled for December 28, 2017 (the "Annual Meeting"), was adjourned to achieve a quorum on the proposals to be approved.

The Annual Meeting has been adjourned to 10:00 a.m. Eastern Standard Time on Thursday, February 1, 2018, at the Boca Raton Resort and Club, 501 East Camino Real, Boca Raton, FL 33422, to allow additional time for the Company's stockholders to vote on proposals to approve the following:

1. To elect as directors the nominees named in the proxy statement;

2. To ratify the appointment of EisnerAmper LLP as our independent public accountant for the fiscal year ending December 31, 2017;

3. To advise us as to whether you approve the compensation of our named executive officers (Say-on-Pay); and

4. To approve an amendment to the Company's 2017 Equity Incentive Plan to increase the reservation of common stock for issuance thereunder to 1,645,000 shares from 895,000 shares.

During the period of the adjournment, the Company will continue to solicit proxies from its stockholders with respect to the proposals set forth in the proxy statement. Only stockholders of record on the record date of December 11, 2017, are entitled to and are being requested to vote. If a stockholder has previously submitted its proxy card and does not wish to change its vote, no further action is required by such stockholder.

No changes have been made in the proposals to be voted on by stockholders at the Annual Meeting. The Company's proxy statement and any other materials filed by the Company with the SEC remain unchanged and can be obtained free of charge at the SEC's website at www.sec.gov.

The Company encourages all stockholders that have not yet voted to vote their shares by 11:59 p.m. on Wednesday, January 31, 2018, Eastern Standard Time. If you have not voted, or have mislaid your proxy materials or are uncertain if you have voted all the shares you are entitled to vote please see "How You Can Vote" in the proxy materials. Every single vote counts.

23.     On January 31, 2018, the Company issued another press release entitled "Riot Blockchain Announces Adjournment of Annual Meeting of Stockholders" which again announced the cancelation of the annual meeting of stockholders scheduled for the following day. The press release stated in relevant part:

CASTLE ROCK, Colo., Jan. 31, 2018 /PRNewswire/ -- Riot Blockchain, Inc. (Nasdaq: RIOT) (the "Company") today announced that its 2017 Annual Meeting of Stockholders (the "Annual Meeting") was adjourned for a second time to achieve a quorum on the proposals to be approved. Under Nevada law, a new record date is required to be set.

The Company will file and mail a new proxy statement to its shareholders of record as soon as practical after its Board of Directors approves the new record date and schedules a new date and time for its Annual Meeting.

24.     The statements referenced in ¶¶ 20-23 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Riot lacked a meaningful business plan with respect to the cryptocurrency business and had only minimal investments in cryptocurrency products; (ii) the Company changed its name to Riot Blockchain, Inc. as part of a scheme to capitalize on public interest in cryptocurrency products, thereby driving up the Company's stock price and enriching inside shareholders; (iii) Riot never intended to hold its Annual General Meetings scheduled for December 28, 2017 and February 1, 2018; and (iv) as a result of the foregoing, Riot shares traded at artificially inflated prices during the Class Period, and class members suffered significant losses and damages.

**The Truth Begins to Emerge**

25.     On February 16, 2017, CNBC published an article detailing questionable practices at Riot, stating in relevant part:

As bitcoin hit record highs in late December, a hot new stock was making news on a daily basis. Riot Blockchain's stock shot from $8 a share to more than $40, as investors wanted to cash in on the craze of all things crypto.

***But Riot had not been in the cryptobusiness for long. Until October, its name was Bioptix, and it was known for having a veterinary products patent and developing new ways to test for disease.***

That might sound somewhat like the type of newly minted blockchain company that has gained SEC attention.

***"Nobody should think it is OK to change your name to something that involves blockchain when you have no real underlying blockchain business plan and try to sell securities based on the hype around blockchain," SEC Chairman Jay***

8

*Clayton said, speaking in generalities in recent testimony to Congress. The SEC declined to comment to CNBC about Riot Blockchain.*

The company did make an investment in a cryptocurrency exchange in September and two months later did purchase a company that has cryptocurrency mining equipment, but paying more than $11 million for equipment worth only $2 million, according to SEC filings.

That purchase and the company's name change aren't Riot's only questionable moves.

*A number of red flags in the company's SEC filings also might make investors leery: annual meetings that are postponed at the last minute, insider selling soon after the name change, dilutive issuances on favorable terms to large investors, SEC filings that are often Byzantine and, just this week, evidence that a major shareholder was getting out while everyone else was getting in.*

\* \* \*

*But with less than one day's notice, Riot twice "adjourned" its annual meeting, first scheduled for Dec. 28 and then for Feb. 1. It's not clear the company ever planned to have the meeting. Numerous employees at the hotel told CNBC it had no reservations for either date under the name of Riot Blockchain or any affiliated entity.*

\* \* \*

[Gibson, Dunn & Crutcher LLP partner Richard] Birns analyzed Riot Blockchain's SEC filings for CNBC and found additional concerns.

*"I see a company that has had a change of control of the board. I see a company that has had a change in business. I see a company that has had several dilutive issuances immediately following the change of the board and change of the business. And I see a stock that has gone zoom," he said. "And what I understand a significant amount of insider selling. So yes, these are red flags."*

Jacob Zamansky, founder of Zamansky LLC, which specializes in securities fraud, also expressed caution.

"With the absence of revenue on the company's current financial statements, I would think investors need to be very cautious of a highly speculative stock with a lot of red flags," he said.

(Emphasis added.)

26.    On this news, Riot's share price fell $5.74, or over 33.37%, to close at $11.46 on February 16, 2018, damaging investors.

27.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Riot securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Riot securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Riot or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Riot;

- whether the Individual Defendants caused Riot to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Riot securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

34.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Riot  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Riot securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

35.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

37.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

39.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Riot securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Riot securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

40.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Riot securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Riot's finances and business prospects.

41.     By virtue of their positions at Riot , defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

42.   Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Riot, the Individual Defendants had knowledge of the details of Riot's internal affairs.

43.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Riot.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Riot's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price

of Riot securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Riot's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Riot securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

44.     During the Class Period, Riot securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Riot securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Riot securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Riot securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

45.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

46.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

47.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.     During the Class Period, the Individual Defendants participated in the operation and management of Riot, and conducted and participated, directly and indirectly, in the conduct of Riot's business affairs.  Because of their senior positions, they knew the adverse non-public information about Riot's misstatement of income and expenses and false financial statements.

49.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Riot's financial condition and results of operations, and to correct promptly any public statements issued by Riot which had become materially false or misleading.

50.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Riot disseminated in the marketplace during the Class Period concerning Riot's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Riot to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Riot within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Riot securities.

51.     Each of the Individual Defendants, therefore, acted as a controlling person of Riot.  By reason of their senior management positions and/or being directors of Riot, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Riot to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Riot and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

52.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Riot.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 22, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang (not admitted)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com
         hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein (not admitted)
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*

18

**Submission Date**

2018-02-19 12:24:57

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.     I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Riot Blockchain, Inc. ("Riot" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Riot securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Riot securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Riot securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Bruce greenawalt

## Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
| --- | --- | --- |
| 12/21/17 | 1000 | 35.80 |

## Sales

# Documents & Message

**Upload your brokerage statements showing your individual purchase and sale orders.**



**Signature**



**Full Name**

bruce  greenawalt



By clicking on the Submit button below, I intend to sign and execute this agreement and retain Bronstein, Gewirtz & Grossman, LLC and associated counsel to proceed on Plaintiff's behalf, on a contingent fee basis.

**RIOT BLOCKCHAIN, INC. (f/k/a BIOPTIX, INC.)**          **Greenawalt, Bruce**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| 12/21/2017 | Purchase | 1,000 | $35.8000 |